FERDINAND ROZIER, JR., Appellant, *v.* G. B. JOHNSON AND WIFE *et al.*, Respondents.

1. *Partition—Tenants in common—Ouster.*—Where one tenant in common ousts his co-tenant and holds exclusive possession of the premises, no action of partition will lie until the co-tenant has established his title in an action of ejectment.

2. *Equity—Trust—Tenants in common.*—Where one tenant in common ousts his co-tenant, and afterward buys in an outstanding title, can the co-tenant claim the benefit of the title thus secured ? *Quære.*

*Appeal from St. Charles Circuit Court.*

*Whittelsey,* for appellant.

I. The parties are tenants in common in the fee of that part of the land lying outside of the St. Charles commons, and were tenants in common in equity of that portion with the commons. At the time of the sale to McKnight & Brady, by Duquette's administrator, there was nothing but a claim to a tract of land, unconfirmed. The claim was presented for 6,000 arpens, with no definite location, but to be located near a particular place, Marais Temps Clair ; and the recommendation was, that 400 arpens be confirmed, and 400 arpens were confirmed. There being no definite location, the claim required not only a confirmation, but also a survey, before the title attached to any particular land. (Montgomery v. Landusky, 9 Mo. 714 ; Stoddard v. Chambers, 2 How. 284 ; Bissell v. Penrose, 8 How. 317 ; Papin v. Massey, 27 Mo. 445 ; St. Louis v. Toney, 21 Mo. 243 ; Berthold v. McDonald, 24 Mo. 126 ; Menard's heirs v. Massey, 8 How. 293 ; Ashley v. Turley, 13 Mo. 430 ; Maguire v. Tyler, 25 Mo. 484.)

The deed of the administrator of Duquette conveyed the claim of Duquette to McKnight & Brady, and the title under the survey enured to the benefit of the assignees, and it was not necessary that the deed should describe the land by metes and bounds. The rules of the common law are inapplicable to the construction of Spanish concessions and

Rozier v. Johnson et als.

claims. (Bird v. Montgomery, 6 Mo. 510; Mullanphy v. Redman, 4 Mo. 226; Hogan v. Page, 22 Mo. 55.) Claims liable to sale—Landes v. Perkins, 12 Mo. 238; Landes v. Brant, 10 How. 348.

II. The parties being tenants in common, claiming through the same deed, the defendant upon the purchase of the outstanding title to part of the land became trustee for her cotenant, who is entitled to the benefit of the compromise upon contribution to the common burden. (Rozier v. Griffith, 31 Mo. 171; Picot v. Page, 26 Mo. 398, 420, 421; Van Horne v. Fonda, 5 J. Ch. 388, 406; Beauchamp v. Venables, 3 Dana, 326; Phelan v. Kelly, 25 Wend. 389; Jackson v. Strader, 5 Cow. 529; Jackson v. Hinman, 10 J. R. 292; Lee v. Fox, 6 Dana, 171, 176; Notes to Keech v. Sandford, 1 Wh. & Tud., L. C. Am. ed. 65, 67, 73; Featherstonhaugh v. Fenwick, 17, Ves. 298, 310; Alden v. Fourdee, 3 Swan., 489; Faucett v. Whitehouse, 1 Russ. & Myl. 132; Smiley v. Dixon, 1 Pen. & Watts, 439, 441; Galbraith v. Elder, 8 Watts' 81, 95; Myers, Appeal, 2 Barr. 463, 466; Briton v. Hardy, 20 Ark. 381.)

The auditor's deed did not give any title to the ancestor of defendant, nor destroy the tenancy in common, for the reason that it was his duty to pay the taxes, and he could not acquire the title by bidding on the lands at a tax sale. (Morgan v. Herrick, 21 Ill. 481; Page v. Webster, 8 Mich. 363.)

III. The parties being tenants in common, and the plaintiff resorting to equity to enforce the resulting trust, is entitled to the remedy he seeks, of contribution and partition. (Agar v. Fairfax, 2 Wh. & Tud. L. C. Am. ed., p. 1, 485, notes; Welch v. Anderson, 28 Mo. 197; Spitts v. Wells, 18 Mo. 468; Allen v. Pipkin, 29 Mo. 229; Cartwright v. Pulteney, 2 Ath. 381; Hosford v. Merlin, 5 Barb. C. R. 51; Coxe v. Smith, 4 J. C. R. 276; Rozier v. Griffith, 31 Mo. 171.)

IV. Equity has jurisdiction to make partition, and at the same time to take and state an account for the rents received, improvements made or moneys paid for the common benefit. (See this case 31 Mo. 171; Notes to Agar v. Fairfax, 2 Wh.

& Tud. S. C. p. 1, 485 ; 1 Sto. Eq. § 14 ; Turner v. Morgan, 8 Ves. 143 ; Munday v. Munday, 2 Ves. 122 ; 1 Sto. Eq. § 656, n. b., &c.; Spitts v. Wells, 18 Mo. 468.) A court of equity having acquired jurisdiction for one purpose, will do complete justice between the parties. (Keeton v. Spradling, 13 Mo. 321 ; Miller v. Wells, 5 Mo. 6 ; 1 Sto. Eq., §§ 64, 69, 71 ; Russell v. Clark's Ex., 7 Cranch, 69 ; 8 Ves. 143 ; 2 Ves. 122:)

V. The parties being tenants in common, no actual ouster of plaintiff or his grantor is shown, because the possession of one is the possession of all, by presumption of law. There was no actual cultivation or enclosure of any part of the premises until the spring of 1850, and this suit was brought in 1859 ; there can be no pretence, therefore, that plaintiff's title is barred by the statute of limitations. Warfield v. Lindell, 30 Mo. 272, which seems conclusive of this case. As to what constitutes possession, see Harrison v. Cachelin et al., 27 Mo. 26. Possession, by presumption of law, always runs with the legal title until an actual adverse possession be shown. In overlapping claims, presumptive possession is with the legal title, and the ouster must be actual. (Cottle v. Sydnor, 19 Mo. 764 ; McDonald v. Schneider, 27 Mo. 405 ; Griffith v. Schwenderman, 27 Mo. 412.)

Neither party had title to the land within the commons until the compromise of 1857 ; there was no actual possession of that portion prior to 1850, and therefore as to that portion the statute has not run against the plaintiff, no matter what we say as to the part without the commons. But the plaintiff contends that no actual adverse possession is shown which bars his right to any part of the lands.

VI. Plaintiff claims that all the points in this case were decided in his favor when it was before the court in 31 Mo. 171, and that judgment should be entered for the plaintiff for the relief he seeks.

VII. The court erred in admitting the auditor's deed, no preliminary proofs being given to show his authority to make the deed. It claims to be a deed for the taxes of a non-

resident, when the defendant's evidence shows that Duquette died in 1816, and the land was sold to McKnight and Brady by a recorded deed in 1817, and at the date of the tax (1833, and sale 1835) belonged to Griffith and the heirs of Brady as tenants in common.

VIII. The possession of the defendant, although adverse, did not deprive the plaintiff of his partition as decided when this case was before the court, 31 Mo. 171.

*H. C. Lackland,* for respondents.

Plaintiff ought not to maintain this suit for the following reasons:

1. The plaintiff has no title to any portion of said survey 1668.

2. Plaintiff is not a co-tenant with the defendants; he has no title in privity with that of defendants.

3. Plaintiff has no possession of said land, either actual or constructive; but, on the contrary, defendants were at the commencement of this suit, and are now, in the actual adverse possession of said land. Adverse possession is a bar to this suit in partition.

4. Defendants have had actual adverse possession of said land for more than ten years.

I. The plaintiff in the course of the trial showed no title to any portion of survey No. 1668.

II. Plaintiff is not a co-tenant of the defendant; their titles are not common. There is no privity or relationship between their titles. The title of defendants is hostile to that of plaintiff, and possession by defendants under their title, claiming the whole, must necessarily be hostile and adverse to plaintiff.

III. Defendants at the commencement of this suit were in the actual adverse possession of survey 1668. What are the facts that constitute adverse possession, is a question of law; but the facts themselves are to be found by a jury, or by the court sitting as a jury. The court sitting as a jury in this case, found these facts for the defendants. (Macklot

v. Du Breuil, 9 Mo. 473.) Adverse possession for any length of time is a bar to an action in partition. It makes no difference whether the adverse possession originated by an ouster for a co-tenant, or by an entry and claim of the whole under a hostile title. The possession in this case did not originate (or arise) under an equitable title, nor under any title that is claimed to be equitable by the plaintiff.

The possession of the defendants did not originate under the title acquired from the city, which is the only one claimed by the plaintiff to be an equitable title. (1 Sto. Eq., Note 1 to § 650, and the authorities there cited; Vorh., N. Y. Code, p. 591, q. and the authorities there cited; Ang. Lim. p. 466, § 14; 26 Mo. 471; reaffirmed, 31 Mo. 171; Wilkins v. Wilkins, 1 Johns. Chan. 111; Phelps v. Green, 3 Johns. Chan. 305; Manners v. Manners, 1 Green's Chan. 384; Garret v. White, 3 Iredell, Eq. 131; Ramsey v. Bell, 3 Iredell, Eq. 209; Fleet v. Dorland, 11 How. Pr. 491–2; Hosford v. Merwin, 5 Barb. 51.) As to what constitutes adverse possession, *vide* Ang. Lim., p. 425, §§ 18, 19, 21, 22, 25, 26; Jackson v. Brink, 5 Cow. 483; Ellicot v. Pearl, 10 Peters, 432; 22 Mo. 70, 74, 75; 20 Mo. 186; 30 Mo. 310, 316; Schultze v. Lindell, 32 Mo. 554, &c., 557; 31 Mo. 398–9.

The defendants and their ancestors exercised every possible act of conclusive ownership over the land from 1830— 1836 to 1864, although they did not put a house and fence on the land until 1850. As to what constitutes ouster of one co-tenant by another, *vide* Ang. Lim. p. 462, §§ 11, 12, 13, 14, 15; 2 Greenl. Cruise Rl. Prop. Title XX. p. 402, § 14, note 3; Warfield v. Lindell, 30 Mo. 281, 286; Frederick v. Gray, 10 Serg. & Rawle, 182; Jackson v. Tibbets, 9 Cow. 241; Galbraith v. Galbraith, 5 Watts' Penn. 190; Bolton v. Hamilton, 2 Watts & Serg. Penn. 299, 308.

The fact that plaintiff brought suit for division of the rents and profits, is an admission that defendants refused to account to him for rents, &c., which amounts to an ouster. (Philips v. Greg, 10 Watts, 158.)

IV. 1. The title from the City of St. Charles to defendant, Eliza A. Griffith, is the only one claimed by plaintiff to be an equitable title. There is no equity in this title. Defendants never at any time occupied a position of trust or confidence towards plaintiff or his grantor. Defendant had been in the exclusive adverse possession of said land many years when she purchased said title. This was an issue raised by the pleadings, and it was found in favor of the defendants by the court sitting as a jury. Defendant purchased for her own sole benefit. Adverse possession negatives the presumption that the acts of the possessor are done for the benefit of the co-tenants.

2. The commons of the city of St. Charles were confirmed by act of Congress 13th June, 1812. Survey No. 1668 was confirmed by act of Congress, 29th April, 1816, and was not located by survey until July 10, 1817. A little over one-half of survey 1668 overlapped the out-boundary line of the commons; hence the true title to that portion of said survey within the commons was in the City of St. Charles. Neither Duquette nor his assigns, nor the plaintiff nor his grantors, nor the defendants, had the title to said portion; and the City of St. Charles had the right to sell the said land, lying within her commons, to whom she pleased. She did sell said land lying within the commons to the defendant, Eliza A. Johnson, by said deed dated November, 1857.

Plaintiff was not heard of or thought of in said transaction. The defendants are therefore entitled to the entire benefit of said purchase, and plaintiff cannot claim any benefit in the same. (23 Mo. 188, &c.; 26 Mo. 30, 40.) The city title is superior to the Duquette title. (18 Mo. 80; 13 Mo. 603; 7 Mo. 7; 27 Mo. 445, &c.; 6 Mo. 335; 28 Mo. 519, &c.; 18 Mo. 593-4-5; 29 Mo. 489, 512-13; 18 Mo. 507-8; 31 Mo. 275; 32 Mo. 35, 44, 45; 32 Mo. 68, 78; 32 Mo. 21, &c.; 32 Mo. 29.)

Bates, Judge, delivered the opinion of the court.

This case was before this court once before, by the style of

Rozier v. Griffith, and the decision is reported in 31 Mo. 171. After the case was remanded, the defendant having intermarried with George B. Johnson, he became a defendant, and with his wife answered the petition. Upon the issues made by the petition and answer, the base was tried by the Circuit Court and a decision made, " that the defendants' possession was adverse to that of any co-tenant and amounted to an ouster, and that plaintiff had no claim in equity to share the benefits of the compromise made with the town of St. Charles ; and that on account of said ouster and adverse possession, that plaintiff was not entitled to partition of any part of said land," and thereupon the court gave judgment for the defendants, and the plaintiff appealed to this court. The petition states that the parties are tenants in common of a tract of land, and that the defendant had purchased an outstanding title to a part of the land, and ask judgment for partition for the benefit of the purchase of the outstanding title and for an account of rents, profits, &c.

The defendant denied the co-tenancy, set up adverse possession, &c.

The evidence showed that the land was confirmed to Francis Duquette ; that it was sold by Duquette's administrator to John McKnight and Thomas Brady, on the 29th of April, 1817 ; that McKnight's interest was sold under execution against him to A. L. Magenis and Daniel Griffith, on the 22d of November, 1825, and Magenis conveyed his interest to Griffith on the 26th of November, 1825 ; that Griffith died in 1844, leaving a widow and two children, one of whom is the defendant Eliza; and that in 1852, by partition among the heirs of Griffith, the tract of land in question was assigned to Eliza ; that on May 30th, 1846, Brady's administrator sold his interest in the tract of land to John O'Fallon, who sold the same to the plaintiff on June 28, 1859.

In stating these transfers no attention is paid to the objections made to several of the deeds and no opinion is given as to the effect of them, but for the present purpose they are assumed to be effectual to convey the interests they profess

to convey in the land in question. It appears also that a portion of the tract was overlapped by the commons of the town of St. Charles, and that suit was brought by the town for the possession of that part, which suit was compromised by the defendant Eliza (by her guardian) and the title of the town to that part conveyed to said Eliza on the 3d day of November, 1857. The town's title was the better title, and that purchase is the one, the benefit of which the plaintiff seeks.

In 1835, Griffith bought a tax bill to the tract for the taxes of the year 1833, which were assessed to Duquette, who had then long been dead, and from that time (1835) Griffith and his representatives continued to pay the taxes upon the land which were assessed to him, and after his death to his representatives. Prior to 1850 there was no actual possession of the land, and no acts of ownership exercised over it by the predecessors of the defendant other than the payment of taxes, verbal claim of title, and the appointment of agents to protect it from trespassers.

In 1850, the widow of Daniel Griffith took possession of the tract by enclosing and cultivating a portion of it, and that possession was continued by the defendant after the land was assigned to her in the suit in partition, down to the present time. No direct notice was ever given the plaintiff or his predecessors in title, that the defendant or her predecessors held adversely to him or them. The representatives of Daniel Griffith after his death, probably in ignorance of the real state of their title, claimed the entire ownership of the whole tract, and in all their actings, including the controversy and compromise with the town of St. Charles, assumed that they were the sole owners of the tract and recognized no co-tenancy with any other person. During all this time the plaintiff and his predecessors in title do not appear to have exercised any acts of ownership over the land, or to have asserted any claim to the possession of it down to the time of the bringing of this suit in 1859.

It is always difficult in cases of this character, to determ-

ine what facts amount to an ouster. Yet in this case it appears that the exclusiveness of the possession of the defendant was open and notorious, and therefore it cannot be held that the Circuit Court erred in declaring that the possession of the defendant amounted to an ouster. In the case of Warfield v. Lindell, 30 Mo. 272, this subject was fully discussed, and, upon the principles stated in the opinion delivered in that case, the decision of the Circuit Court in this case can be sustained. There being an ouster prior to the purchase from the town of St. Charles, the plaintiff is not entitled to the benefit of that purchase, nor to partition, before regaining possession.

The deed of 1835, from the Auditor of Public Accounts for the tax title, was admitted in evidence only as one means of showing the character of the subsequent possession; and for that purpose it was immaterial that no title may have been acquired thereby; and for the specific purpose for which it was offered it was admissible, notwithstanding that the purchase by one co-tenant of an outstanding encumbrance generally enures to the benefit of his co-tenants. Alone, it would not show that the subsequent possession was adverse, but it was a circumstance proper to be considered with others in determining the character of the possession.

The judgment of the Circuit Court is affirmed. Judges Bay and Dryden concur.